UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CR-00145-HEA (NCC) |
| | ) | |
| JERALD W. JOHNSON | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS**

Comes now the United States of America, by and through its attorneys, Carrie Costantin,

Acting United States Attorney for the Eastern District of Missouri, and Gilbert C. Sison,

Assistant United States Attorney for said District, and hereby submits the following opposition to

the Defendant's Motion to Suppress (Doc. 24):

I.      INTRODUCTION

Law enforcement officers discovered child pornography images and video files on the

defendant's computer and computer related peripherals that were seized from the defendant's

residence as a result of two state search warrants issued by the Circuit Court of Franklin County.

The defendant moves to suppress the evidence seized pursuant to those warrants on the grounds

that the information in the affidavits did not contain sufficient probable cause to warrant the

search.   Specifically, the defendant argues that there were no facts presented indicating any

criminality on the part of the defendant, either past, present or about to occur.   The defendant

also argues that the defendant was unlawfully seized in his residence while law enforcement

officers proceeded to seek a search warrant.   Based on the defendant's submission, it does not

appear that the defendant is raising any motion to suppress regarding any statements that he

made to law enforcement officers.

The evidence presented at the hearing will show that the affidavits in support of the search warrants were supported by sufficient probable cause.   Contrary to the defendant's contention, an affidavit in support of a search warrant need not show evidence of criminal conduct or activity to justify a search.   Rather, all that is required is the presentation of sufficient facts "to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place."   *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016).   *See also United States v. Morgan*, 842 F.3d 1070, 1074 (8th Cir. 2016).   But, even if the Court disagrees and finds that there is not sufficient probable cause, suppression is still not warranted because of the *Leon* good faith exception.   Finally, as to the defendant's contention that he was illegally detained, it is without merit as he was not, and even if he had been so detained, there was no evidence obtained as a result of such detention.   For these and the foregoing reasons, the Government requests that the Court deny the defendant's motion to suppress evidence.

## II.    FACTUAL BACKGROUND[1]

On August 27, 2015, a counselor at Washington Middle School notified the Washington Police Department that one of their students had participated in a photo shoot that appeared to be suspicious.   The school counselor interviewed M.C., an eighth grader at Washington Middle School who stated that on August 26, 2015, she participated in a photo shoot at a residence on Horn Street with her ten year old friend, A.S., who was staying with her that night.   M.C. indicated that she and A.S. left their residence around 7:00 p.m. to walk to Sonic.   Along the

---

1    The background and factual summary information provided is intended as a general guide to aid the Court.   It is not intended as a comprehensive statement of the Government's case.

way, they purportedly met a woman who invited them into her house where they took pictures. M.C. indicated that the photographs were not sexual in nature and did not include any nudity.

After being interviewed by the school counselor, M.C. was also interviewed by Officer Casey Hill.   When questioned by Officer Hill, M.C. admitted that it was a male subject by the name of "Jerry" that had actually photographed her and A.S.   Although, M.C. stated that none of the photographs was nude or partially nude, she did state that "Jerry" provided her with different outfits, some of which were revealing.   M.C. further admitted to wearing lingerie type outfits that were provided to her by "Jerry."   M.C. also noted that A.S. was photographed, but her outfit was not revealing.   M.C., however, did indicate that she and A.S. were completely nude, but only in the bathroom of Jerry's residence when they were changing outfits.

M.C. was unable to provide a specific address where the incident took place, but she indicated that she knew where the house was located and what it looked like.   At that point, Officer Hill contacted Det. Sergeant Steven Sitzes to explain the situation.   Det. Sitzes then responded to the school.   The counselors at the school also notified M.C.'s father, who agreed to come and pick up M.C.   When M.C.'s father arrived, he agreed to drive M.C. to the area to see if she could point out the residence to the officers.   As such, law enforcement officers followed M.C. and her father to a residence on Stafford Street.   M.C. identified a specific residence on Stafford Street as the residence where the incident with her and A.S. took place.   The aforementioned residence was on the corner of Horn and Stafford Street.   M.C. also identified the person that was currently sitting on the front porch of that residence as "Jerry."

Det. Sitzes and Officer Hill accordingly made contact with the defendant on his front porch at around 4:00 p.m.   The defendant responded by asking if the officers were there because of the two girls that were at his residence the night before.   The defendant then voluntarily described his encounter with the girls, which began when the girls asked him for cigarettes,

3

which the defendant refused to provide.   The defendant, however, did provide them with a soda and invited them inside to his residence.

Officer Hill then informed the defendant that he was told that the defendant had taken some pictures of the girls.   The defendant acknowledged that he had and that there were some on his phone.   The defendant then proceeded to invite the officers into his residence.

The defendant explained that M.C. and A.S. commented on the photographs that were on the walls of his living room and dining room.   The photographs were of various females in various stages of undress.   After that discussion, M.C. requested that she be photographed.

The defendant voluntarily provided his cellular phone to Officer Hill, which contained photographs of both girls outside.   Officer Hill then asked the defendant if he had any other pictures of the girls.   The defendant responded by noting that he had just developed some photographs upstairs.   Officer Hill went upstairs with the defendant to a dark room for developing film where he discovered negatives that showed M.C. in lingerie and posing provocatively.   The defendant acknowledged that some of the photographs were provocative, but indicated that M.C. had posed like that on her own.

Officer Hill then asked the defendant if he had taken any digital photographs of the girls. The defendant acknowledged that he had and directed the officers into another room where his computer was located.   The defendant then showed the officers certain pictures that were contained on his computer.   Officer Hill again saw various pictures of M.C. in various poses and in different lingerie outfits.   There were also some pictures of A.S. in a wig and a knee length dress.   The defendant noted that M.C. had asked him to take nude photographs of her, but maintained that he did not photograph any of the girls nude because they did not have any identification with them.   The defendant confirmed that the girls did change clothes in his bathroom, but stated that he did not see either of them nude.

4

While the officers were in the residence, they also noted the existence of a photography studio set up in the defendant's basement.   The studio had professional type lighting and a background.   The officers also noted that there were several photographs hung on the walls of the defendant's residence of young females that were either nude or partially nude.

The defendant further noted that he did not inquire as to the age of M.C.   When Officer Hill informed the defendant that she was only 13 years old, the defendant indicated that he thought she was older and possibly of age.   With respect to A.S., Officer Hill informed the defendant that she was only 10 years old, and the defendant acknowledged that she was young.

The defendant also stated that after the photographs were taken, they all watched a movie.   The defendant ordered a pizza, which they all ate while watching the movie.   Later that night, the defendant offered to take the girls home, but they requested to be dropped off at the local Sonic.   The defendant could not recall what time he left his residence, but did note that after dropping them off, he went to get some cigarettes at a local gas station and returned to his residence at approximately 10:45 p.m.

The defendant freely acknowledged that if he had heard of a stranger inviting a 13 year old and 10 year old into his house and taking provocative photographs that it would raise concern.   However, the defendant reiterated several times that he thought M.C. was at least 17 years of age, with the defendant stating in reference to M.C.'s body that "I've never seen a 13 year old that looks like that."

After the discussion with the defendant ended, Officer Hill requested that the defendant allow them to search through his devices, such as cameras, computers and hard drives to make sure there were no illegal photographs of the girls.   The defendant was then presented with a Washington Police Department Consent to Search Form.   The defendant, however, declined to give the officers permission indicating that he would delete the photographs if that would make

everything okay.   At that point, the officers indicated that they would seek a search warrant from the Franklin County Circuit Court.   It appears that at least one of the officers remained at the defendant's residence during the application for the search warrant.

The Hon. Gael Wood of the Franklin County Circuit Court issued a search warrant for the defendant's residence that same day on August 27, 2015.   A copy of the application, affidavit, search warrant and return is hereto attached as Exhibit 1.   The search warrant was executed a couple of hours after the defendant's initial encounter with Det. Sitzes and Officer Hill.   During the execution of the search warrant, the defendant sat at the kitchen table with Officer Hill.   The officers permitted the defendant to leave if he wanted to, but he elected to remain.   The officers also allowed the defendant to get something to eat or drink, use the restroom or go outside if he so desired.   On several occasions, the defendant attempted to explain himself to law enforcement officers, but he was reminded that he had not been advised of his rights and that there would be a time to talk later.

As a result of the execution of the search warrant, various items were seized from the defendant's residence.   Such items included, among other things, a Dell laptop computer and Dell computer tower, computer cameras, external hard drives and other computer peripherals, pornographic magazines and CDs and DVDs, a packing slip for lingerie, a wig and women's shoes, various printed photos and negatives, and a little girls watch and comb.

An additional search warrant was obtained on September 3, 2015, to search the computers, computer peripherals and other electronic equipment seized from the defendant's residence on August 27, 2015.   A copy of the application, affidavit, search warrant and return is hereto attached as Exhibit 2.   Many of the same facts that were mentioned in the original application were repeated in the second application.   In addition to those facts, the affiant, Captain Charles Subke, also detailed his extensive experience with child pornography

investigations, the use of computers and other electronic equipment for the sharing and dissemination of child pornography and the collection habits of child pornography and erotica collectors.

All computers, computer peripherals and electronic devices were turned over to the Regional Computer Crimes Education Enforcement Group ("RCCEEG") for a forensic analysis. RCCEEG's forensic analysis revealed the existence of child pornography files on the defendant's Dell laptop computer.   The files included both image files, as well as over one hundred video files.   Many of the videos had file names indicative of child pornography, such as "PTHC" which means pre-teen hard core and "JB" which means jail bait, as well as "12 yo" and "11 yo" which is indicative of the pre-pubescent age of the victims in the videos.

RCCEEG also discovered child pornography files on the defendant's Toshiba external hard drive.   Videos containing child pornography were found on this peripheral, some of which were also found on the defendant's Dell laptop computer.   RCCEEG also discovered more than 1,500 short video clips on this same external hard drive, a couple of hundred of which appeared to depict child pornography.   RCCEEG likewise identified an optical disc that contained videos of child pornography.   The child pornography files contained on the Dell laptop computer, the Toshiba external hard drive and the optical disc formed the basis of the defendant's three-count indictment for possession of child pornography.

With respect to the defendant's Dell desktop computer, RCCEEG uncovered additional evidence indicating the defendant's possession of child pornography.   For example, while RCCEEG did not identify any child pornography images or videos on this device, it did discover file names indicative of child pornography in unallocated space.   File names with terms such as "PTHC" and "7Yo", "13Yo", and "6Yo" were found in said unallocated space.

In addition, RCCEEG discovered numerous problematic conversations using Yahoo

messenger that involved the defendant's user name.   For example, one conversation involved the trafficking of child pornography with the defendant advising someone where and how to look for child pornography files.   Another exchange involved the defendant describing inappropriate contact between himself and one of his juvenile models that he was photographing. Specifically, the defendant noted that he had taken pictures of a juvenile model in a very tight mini dress that he was trying to share with the person with whom he was having a conversation. During that conversation, the defendant indicated that he had taken off her underwear and had rubbed her thighs.   There were also other discussions between the defendant and others regarding the possible production of child pornography, wherein the defendant discussed the possibility of taking pornographic pictures of another user's minor daughter.   Finally, there were discussions regarding the defendant's computer abilities, as there was as an exchange with another user indicating that the defendant knew how to manipulate certain data about a digital picture to mask when a picture was taken.

### III.   ARGUMENT

**A.    The search warrants issued by the Franklin County Circuit Court were based on sufficient probable cause and were thus valid and enforceable.**

**1.    Applicable legal standards.**

"A valid warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, [or] contraband . . . may be found in the place to be searched."   *United States v. Romo-Corrales*, 592 F.3d 915, 919 (8th Cir. 2010)(citation and internal quotations omitted).   "Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit."   *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010)(citations and internal quotations omitted).   "In dealing with probable cause, . . . as the

very name implies, we deal with probabilities.   These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 232 (1983)(citation and internal quotations omitted).   "Applications and affidavits for issuance of a search warrant should be examined under a common sense approach and not a hyper-technical fashion." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).   *See also United States v. Carter*, 413 F.3d 712, 714 (8th Cir. 2005).   Probable cause may be found in observations made by trained law enforcement officers or circumstantial evidence.   *See United States v. Jeanetta*, 533 F.3d 651, 654 (8th Cir. 2008).

Additionally, to sustain a search warrant, a reviewing magistrate judge need only determine that the issuing judge had a substantial basis for concluding that probable cause existed.   *See Gates*, 462 U.S. at 238-239; *United States v. Adams*, 110 F.3d 31, 33 (8th Cir. 1997).   Information contained within the search warrant affidavit must be examined based upon the totality of the circumstances presented.   *See Gates*, 462 U.S. at 230.   Once a judicial officer has issued a warrant based upon a finding of probable cause, that finding deserves great deference.   *Id.* at 236.   *See also United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017)(noting that issuing court's probable cause determination should be given great deference). Part of the reason for this deference is because a judge may draw reasonable inferences from the facts presented in determining whether probable cause exists to issue a warrant.   *See United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000).

> **2.** **Given the totality of the circumstances, sufficient facts existed to lead a prudent person to believe that contraband evidence would be discovered on defendant's computers.**

The immediate question facing the Court in this case is whether the existence of child erotica, which is itself legal, can form the basis for the issuance of a search warrant for child pornography.   The Eighth Circuit has held that the possession of child erotica, when combined

with other facts, can be sufficient to establish probable cause to search an individual's home for

child pornography.   *See United States v. Hansel*, 524 F.3d 841, 846 (8th Cir. 2008).   In *Hansel*,

the defendant pled guilty to possession and distribution of child pornography. *Id.* at 843. The

defendant argued that the district court erred in its denial of his motion to suppress the evidence

seized from his residence because the second search warrant and the federal search warrant did

not establish probable cause that there would be child pornography on his computer. *Id.* at 845.

The first search warrant was based on allegations that the defendant sexually abused two minor

females, revealing multiple photographs of nude prepubescent females as well as computer and

camera equipment. *Id.* at 843-844. The second search warrant, based on those findings,

authorized a search for electronic devices. *Id.* at 844.

The defendant argued that the affidavit did not establish probable cause because one's

possession of legal child erotica cannot establish probable cause that one also possesses child

pornography. *Id.* at 846. The court rejected this argument, stating that the defendant failed to

consider the totality of the circumstances. *Id.*   Given the presence of the child erotica in addition

to the allegations of sexual abuse, the presence of nude photographs of minors, the computer and

camera equipment and the pictures of the alleged victims in swimsuits, the court concluded that

the district court did not err in finding that the second state search warrant or the federal search

warrant established probable cause.   *Id.*

It is important to note that in the footnotes of the opinion, neither the district court nor the

Eighth Circuit decided whether possession of child erotica alone was enough to establish

probable cause that an individual possesses child pornography. *Id.* at FN 3. Instead, the court

noted that it was the totality of the circumstances that established probable cause. *Id.* The district

court found that possession of child erotica might not alone establish probable cause to believe

one also possesses child pornography. *United States v. Hansel*, 2006 WL 3004000, at *11 (N.D.

Iowa Oct. 20, 2006).

Here, however, the issuance of the search warrant is based on more than just the defendant's possession of child erotica.   While it is true that *Hansel* is distinguishable in that the present case does not contain any allegations of sexual abuse, the other minor facts that the court relied upon with respect to the totality of the circumstances are also present in this case.   For example, the pictures of the alleged victims in swimsuits is similar to the pictures of M.C. in lingerie.   Also, like *Hansel*, the defendant here had numerous computers and camera equipment. Finally, the pictures of nude photographs of minors, while not pornography, is similar to the pictures of young females in various stages of undress hanging on the walls of the defendant's residence.

And, while there are no allegations of sexual abuse, there are still aggravating circumstances.   The instant case takes place against the backdrop of an adult stranger in his forties inviting two minor females, ages 13 and 10 into his residence to take revealing and provocative photos, to watch a movie and to eat dinner all over the span of a couple of hours. The defendant, himself acknowledged that such circumstances would result in suspicion and concern, as it should.   Essentially, the defendant's actions are tantamount to child enticement. And, while enticement is not sexual abuse, it is still an aggravating factor that can in large part justify the issuance of a search warrant.

For example, in *United States v. Colbert*, 605 F.3d 573 (8th Cir. 2010), the Eighth Circuit held that the district court did not err in refusing to suppress evidence from the defendant's apartment.   *Id.* at 579.   The defendant argued on appeal that the affidavit failed to establish probable cause to search his apartment for child pornography.   The affidavit included evidence that the defendant had attempted to lure a five year old girl to his apartment.   The affidavit also alleged that the defendant had a vehicle and clothing to make it look like he was a police officer

so as to appear as an authority figure.   The affidavit further alleged that the defendant had a pair

of handcuffs and a pair of binoculars, which could give rise to the inference that he was

surveilling the area for potential targets.   Finally, the affidavit alleged that the defendant claimed

to have movies for children to watch and other things for children to do.   *Id.* at 577.

The district court concluded that the information established probable cause to search the

defendant's apartment because sexual depictions of minors in the form of child pornography

could be logically related to the crime of child enticement.   *See Colbert*, 605 F.3d at 577.   The

Eighth Circuit agreed and noted in its reasoning that there was an intuitive relationship between

acts such as child enticement and the possession of child pornography.   *Id.* at 578.   The Eighth

Circuit further noted that the possession of child pornography was a "logical precursor to

physical interaction with a child" and that the ease in which child pornography was obtainable

made "it a simpler and less detectable way of satisfying pedophilic desires."   *Id.*   The Eighth

Circuit ultimately concluded that the state could have reasonably concluded that there would be a

fair probability that child pornography would be found in the defendant's apartment.   *Id.* at 579.

In addition to the child enticement, there is also the totality of the other facts, which

further reinforces the notion that the officers reasonably could have concluded and inferred that

the defendant possessed contraband evidence on his computers or other electronic devices.

M.C. herself stated that both she and A.S. were nude when they changed clothes in the

defendant's bathroom.   The defendant himself also acknowledged that M.C. wanted to be

photographed in the nude.   There were also numerous pictures of M.C. in lingerie and

provocative poses contained in several mediums, *e.g.*, digital photos on the defendant's computer

and phone and professional photos developed in a dark room.   The fact that the defendant had

lingerie that would fit a barely above pre-pubescent child is also arguably problematic.   The fact

that the defendant also openly commented to the officer's on the development of M.C.'s body is

12

additionally troubling and gives the officers an indication that the defendant is, in fact, attracted

to young children, thus making it more likely that he may possess child pornography.   Finally,

after the officers asked for permission to search his computers, the defendant refused and offered

to delete whatever photos he had of the girls.   This obviously would lead any reasonable law

enforcement officer to conclude that the defendant did, in fact, have something to hide.   Given

these circumstances, it was entirely appropriate for the officers to seek the search warrant and for

the state court judge to issue it, as there was, at the very least, a fair probability that contraband

evidence would be found on the defendant's computers and other electronic devices – a

suspicion which was eventually confirmed by the RCCEEG's forensic analysis.[2]

---

2       One additional point should be noted regarding the probable cause determination.   The

application for the search warrant to search the defendant's residence mentioned generally the

crime of the possession of child pornography.   But, because the search warrant at issue is a state

warrant, the reference was to possession of child pornography under Missouri state law, not

federal law.   This is important because the crime of child pornography under Missouri law is

much broader than the definition of child pornography under federal law.   For example, Section

573.037.1 states that a person commits the offense of child pornography "if such person

knowingly or recklessly possesses any . . . ***obscene material portraying what appears to be a***

***minor less than eighteen years of age.***"   R.S. Mo. §573.037.1 (emphasis added).   "Obscene" is

further defined as "any material or performance if, taken as a whole:   (a) Applying

contemporary community standards, its predominant appeal is to prurient interest in sex; and (b)

The average person, applying contemporary community standards, would find the material

depicts or describes sexual conduct in a patently offensive way; and (c) A reasonable person

would find the material lacks serious literary, artistic, political or scientific value[.]"   R.S. Mo. §

    **3.**      **Even if probable cause is lacking, suppression is not required as the *Leon* good faith exception applies.**

Even if the Court finds that there was insufficient probable cause, the good faith exception articulated by the United States Supreme Court in *United States v. Leon* is applicable, and thus, there is no need to suppress the evidence at issue.   In *Leon*, the Supreme Court articulated four circumstances where the suppression of evidence was required when evidence was seized pursuant to an invalid warrant.   The first is when an affiant misleads the issuing judge with a knowing or reckless false statement.   The second is where the issuing judge wholly abandons his or her judicial role.   The third is when the supporting affidavit is so lacking in probable cause as to render the belief in its existence entirely unreasonable.   And, the fourth is when the warrant is facially deficient that an executing officer could not reasonably presume its validity.   *See United States v. Leon*, 468 U.S. 897, 923 (1984).

---

573.010(11).

Child pornography under federal law, on the other hand, is more limited to depictions of "sexually explicit conduct."   18 U.S.C. § 2256(8).   This is an important distinction because the affidavits mention that M.C. posed provocatively and in revealing outfits.   While not child pornography under the federal definition, it could conceivably qualify as child pornography und the state definition.   For example, the reference to "prurient" in the definition of "obscene" is defined as having or encouraging an excessive interest in sexual matters, which means that a revealing and provocative photo could encourage an excessive interest in sexual matters and thus is much closer to qualifying as child pornography under Missouri law.   This gives further justification for the officers' course of action in seeking a search warrant for the defendant's residence.

In the instant case, the first, second and fourth circumstances listed above are clearly not applicable as there is no evidence to support any of those circumstances.   Regarding the third circumstance, given what has already been described above, it would not be entirely unreasonable for a trained officer to have relied on an issuing judge's authorization.   With respect to the initial warrant to secure the search of the defendant's residence, Officer Hill laid out the facts of his encounter with the defendant truthfully and honestly, even including facts favorable to the defendant, such as facts indicating that the defendant had not taken any naked pictures of the two girls.   After laying out the case for the search warrant, a detached and neutral magistrate who just as easily could have denied the warrant, issued the warrant in question. Thus, a reasonably well-trained officer could not have known that executing the search would have been illegal after the judge had given authorization for the search to proceed.   *See, e.g., Notman*, 831 F.3d at 1089 (holding that even if probable cause to issue the search warrant was lacking, the *Leon* good faith exception nevertheless applied because a reasonable and trained officer would not have known that the search was illegal after a judge had issued the warrant).

A similar circumstance arose in the Tenth Circuit case of *United States v. Edwards*, 813 F.3d 953 (10th Cir. 2015).   In that case, the Tenth Circuit held that the affidavit supporting the search warrant to search a defendant's home for evidence of child pornography failed to provide probable cause when he merely posted images of child erotica on the Internet.   *See Edwards*, 813 F.3d at 969.   The affidavit in question stated that the defendant posted child erotica online and wrote comments suggesting a sexual attraction to the child in the images.   *Id.* at 969.   The affidavit also did not allege that the defendant was found in possession of child pornography nor did it mention what types of materials child erotica collectors would be likely to keep in their homes.   *Id.* at 965.   The court further stated that just because child pornography collectors also collect child erotica does not automatically mean that child erotica collectors also collect child

pornography. *Id.*   The court ultimately found the above facts insufficient to establish probable

cause that the defendant possessed child pornography.   *Id.* at 969.

Despite the holding regarding the lack of probable cause, the Tenth Circuit nevertheless

affirmed the district court's denial of the motion to suppress based on the good faith exception to

the exclusionary rule.   *See Edwards*, 813 F.3d at 973.   In discussing the third *Leon* exception,

which is the most applicable here, the Tenth Circuit reasoned that a law enforcement officer is

presumed to act in good faith when he relies on and executes a search warrant issued by a neutral

magistrate.   *Id.* at 971.   This is because the magistrate is more qualified than the police officer

to make the probable cause determination.   *Id.*   The Tenth Circuit concluded that while there

was insufficient probable cause to issue the warrant, "it was not so obviously unsound that it

rendered reliance on the warrant objectively unreasonable."   *Id.* at 972.   *See also Colbert*, 605

F.3d at 579 (concluding that even if affidavit failed to establish probable cause, good faith

exception nevertheless applied because there was no indication that state court judge failed to

perform his proper judicial function).   The same result should likewise obtain here if the Court

concludes that the affidavits in question lacked sufficient probable cause.

**B.     The defendant was not unlawfully detained and any such detention does not serve as
a basis for the suppression of the evidence at issue.**

As an initial point, even if the defendant had been illegally detained, which he was not, it

would not serve as the basis for the suppression of any evidence.   Obviously, any evidence

obtained in violation of a defendant's constitutional rights is subject to suppression.   However,

to the extent that the defendant was unlawfully detained, it did not result in law enforcement

obtaining any evidence against him.   For example, the Government does not intend to rely on

any statements purportedly made by the defendant while the defendant was in his residence and

during the time the officers were seeking a search warrant for his residence.   Nor has the

defendant filed any motion to suppress any statements made by the defendant to law enforcement.   Thus, any illegal detention, to the extent that any such detention occurred would not form the basis for the suppression of evidence found on the defendant's computers and computer related peripherals.   The suppression of such evidence turns solely on whether or not there was probable cause for the warrants to issue in the first instance.

But setting that aside, the defendant's purported detention in his residence was not illegal. The ultimate question is to determine whether a person's freedom of movement has been restrained to such a degree associated with a formal arrest.   This Court should first consider the circumstances surrounding the encounter.   *See United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004).   Second, given those circumstances, this Court should then consider whether a reasonable person would have felt at liberty to terminate the encounter and leave.   *See United States v. Perrin*, 659 F.3d 718, 719 (8th Cir. 2011).   The Court should not be concerned with how a Defendant perceived the situation, but rather look to how a reasonable person would view his options in the same circumstances.   *Id.* (*citing J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2402 (2011)).

In *United States v. Griffin*, for example, the Eight Circuit identified six non-exclusive factors for making the custody determination:   (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during the questioning; (3) whether the suspect voluntarily acquiesced to official questioning or whether the suspect initiated contact with authorities; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; and (6) whether the suspect was placed under arrests at

17

the termination of the questioning.   *See United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

    In the instant case, it was the defendant himself who invited law enforcement into his residence and voluntarily engaged with them and answered their questions.   There also did not appear to be any strong-arm tactics or deceptive stratagems employed during the questioning. The atmosphere was also not police dominated; rather, the incident occurred entirely within the confines of the defendant's residence.   In fact, the defendant voluntarily showed the officers what was in his phone and computer and even showed them some of the pictures he was developing.   Furthermore, at the conclusion of the search warrant execution, the defendant was not placed under arrest.   In fact, during the time that the search was being executed, the officers specifically told the defendant that he was not under arrest.   As to whether the defendant possessed unrestrained movement, the Government fully expects the evidence to show that at all times while the defendant was in his residence, he was free to go as he wished, but that he chose to remain.   Under these circumstances, there is simply no basis to conclude that law enforcement officers illegally detained him.

    In reality, as opposed to the defendant being detained, what actually occurred here is that law enforcement officers temporarily detained the defendant's property, *i.e.*, his computers and other electronic equipment, while they sought the search warrant.   The Eighth Circuit has interpreted the Fourth Amendment to permit the seizure of such property pending the issuance of a warrant, if law enforcement has probable cause to believe that a container holds contraband or evidence of a crime and "if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present."   *United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012).

    Here, when law enforcement officers asked the defendant for consent to search his

computers, the defendant refused to give consent.   He further indicated that he was willing to delete any photos of the girls to make it all better.   Given the defendant's stated willingness to delete the evidence and the officers' reasonable belief that the defendant's computers contained contraband evidence, the officers' temporary detention of the defendant's property was appropriate to prevent the defendant from destroying any such evidence on his computers.

### IV.   CONCLUSION

The defendant in this case enticed a 13 year old and 10 year old into his residence. While these children were in his residence, the defendant took numerous photographs of them, one of whom posed provocatively and dressed in revealing outfits.   The defendant further spent additional time with these girls watching a movie and eating dinner with them, even though they were complete strangers to each other.   Couple this with the other facts showing the defendant's clear interest in child erotica and underage females and a reasonable person could conclude that there would be a fair probability of finding contraband evidence on the defendant's computers. And, even if the evidence presented in the affidavits was not sufficient to satisfy the probable cause standard, suppression is still not warranted given the applicability of the *Leon* good faith exception.   Finally, as to the defendant's claim that he was illegally detained, even if he was so detained, which he was not, it would not serve as the basis for the suppression of the evidence at issue because such evidence was not obtained due to the purportedly illegal detention.   Rather, such evidence was obtained due to the search warrants issued by the Circuit Court of Franklin County.   For these and the reasons set forth in this response, the Government prays the Court deny Defendant's Motion to Suppress.

Dated:    June 15, 2017.

Respectfully submitted,

CARRIE COSTANTIN
Acting United States Attorney

*s/ Gilbert C. Sison*
GILBERT C. SISON, #52346MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
Telephone:   (314) 539-2200
Facsimile:   (314) 539-2020
E-mail:   gilbert.sison@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CR-00145-HEA (NCC) |
| | ) | |
| JERALD W. JOHNSON | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2017, the foregoing was filed electronically with the Clerk

of the Court to be served by operation of the Court's electronic filing system upon the following

counsel of record:

Mr. Robert A. Ciuffa – Ciuffalaw@gmail.com
*Attorney for Defendant, Jerald W. Johnson*

s/ Gilbert C. Sison
GILBERT C. SISON, #52346MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
Telephone:   (314) 539-2200
Facsimile:   (314) 539-2020
E-mail:   gilbert.sison@usdoj.gov